## Glenn, Appellant, *v.* Strickland.

*Evidence—Parol evidence—Technical terms.*

Parol evidence is admissible to explain the trade meaning or under-standing of the use of a technical term in a contract between parties engaged in a particular business or trade.    Such evidence does not vary the terms of the contract but serves to show what is the true interpretation of it.

The terms " a complete carpenter's rig of good quality " and an " out-fit of drilling tools and lines," in a contract for drilling an oil and gas well, are not to be construed by the court, but by the jury, with the aid of competent expert testimony.

Argued May 12, 1902.    Appeal, No. 163, April T., 1901, by plaintiff, from judgment of C. P. Armstrong Co., Sept. T., 1899, No. 163, on verdict for defendant, in case of H. S. Glenn v. C. D. Strickland.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Assumpsit on a contract for drilling an oil well.

The terms of the contract are stated in the opinion of the Superior Court.

The court admitted under exception and objection, testimony of an expert as to what was understood among drillers by a carpenter's rig. [6]

The court charged in part as follows :

The contract requires that Glenn shall furnish an outfit of drilling tools and lines.    Does that include fishing tools ? That is for the jury.    You have heard experts on both sides. Some say it includes fishing tools ; others say it does not, and it is for the jury to say whether or not Glenn substantially complied with this contract.    The words were (1) the material, machinery and appliances necessary for drilling and complet-ing said well, shall be furnished, and the work of drilling the same shall be done in the manner hereinafter specified ; then it is, " He shall furnish boiler, engine, etc., and outfit of drill-ing tools and lines."    Does that include fishing tools under the evidence in this case, and was it a substantial compliance on

the part of Glenn to supply him with drilling tools, and not with fishing tools, under all the evidence in this case? [3]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (3) above instruction, quoting it. (6) Rulings on evidence quoting the bill of exceptions.

*Lev. McQuiston,* of *McQuiston & Will,* with him *Rush Fullerton, Calvin Rayburn* and *W. H. Martin,* for appellant. —The interpretation as well as the construction of a written instrument is for the court and not for the jury: Midland Great Western Ry. Co. v. Johnson, 6 H. L. C. 798; Nellis v. Coleman, 98 Pa. 465; Caley v. Phila., etc., R. R. Co., 80 Pa. 363; Centenary M. E. Church v. Clime, 116 Pa. 146.

If there be a patent ambiguity in the terms of a written contract the court must solve it: Foster v. Berg & Co., 104 Pa. 328; Forsyth v. North American Oil Co., 53 Pa. 168; Duff v. Peoria Grape Sugar Co., 178 Pa. 476; 1 Greenleaf on Evidence, sec. 277.

*J. W. King,* with him *McCain & Christy,* for appellee.

OPINION BY BEAVER, J., July 10, 1902:

We do not quash this appeal, not because there is not good ground for it, for we think there is.   There was no request appearing of record that the charge be reduced to writing from the stenographer's notes and filed of record (Curtis v. Winston, 186 Pa. 492; Patterson v. Groetzinger, 10 Pa. Superior Ct. 327), nor does it affirmatively appear of record, as it should, by a certificate of the trial judge, that the record made up by the stenographer, including evidence and charge, is true and filed of record by his direction: Yoast v. Beatty, 12 Pa. Superior Ct. 219.   Inasmuch, however, as we think the judgment should be affirmed, the appellee suffers no wrong by our failure to quash and it will probably be more useful to consider the only question involved, upon its merits.

By an agreement in writing, the defendant undertook to drill for the plaintiff a well for the purpose of obtaining petroleum or natural gas.   It 'was stipulated that " the material, machinery and appliances necessary for the drilling and completing of

said well shall be furnished and the work of drilling the same shall be done in the manner hereinafter specified, namely:

"I. A complete carpenter's rig of good quality to be furnished by the party of the second part (plaintiff) and all repairs on same, while the well is being drilled, shall be made by and at the expense of the party of the first part (defendants). . . . VIII. Boiler, engine, belt, bull rope, steam and gas pipe and connections to be furnished at the well by the party of the second part; also outfit of drilling tools and lines. . . . XIII. The party of the first part further agrees to pay all expenses and furnish everything necessary to drill and complete said well, except the articles and appliances hereinbefore specifically mentioned to be furnished by the party of the second part."

By the twelfth paragraph of the said agreement it was also stipulated that "the machinery, material and appliances furnished by the said party of the second part shall, at the completion or abandonment of said well, be returned to the said party of the second part in as good condition as when received by the said party of the first part, ordinary wear and tear only excepted." The only question to be considered, although raised in various forms, is, was it the duty of the court, from the consideration of the written agreement itself, to instruct the jury as to what constituted "a complete carpenter's rig of good quality," as set forth in the first paragraph of the agreement above referred to, and an "outfit of drilling tools and lines," as specified in the eighth paragraph, considered in the light of the thirteenth paragraph, or was it a question for the jury, under the evidence of experts in the particular business of boring oil and gas wells?

The plaintiff brought his action against the defendant to recover for the defendant's failure to comply with the terms of the written agreement in completing the well and in abandoning the same before its completion, by reason of which the "plaintiff was compelled to go to said well and remove the tools therefrom and to remove the tools, machinery, boiler, engine, casing, etc., to another location. That, in doing so, he was compelled to pay, lay out and expend a large sum of money, to wit: the sum of $652." The defense set up by the defendant was the failure of the plaintiff to furnish the complete carpenter's rig and the outfit of drilling tools and lines. What is "a complete carpenter's rig of good quality?" What is an "out-

fit of drilling tools and lines?" These terms describe appliances which are peculiar to the business of boring wells, especially for petroleum and natural gas. Such business is peculiar within a limited area and deals not only with special appliances but with peculiar names and designations therefor. It is possible that there may be a judge in Pennsylvania who would understand the full meaning of the terms of the agreement under consideration and of other technical terms connected with this particular business. If there be such a judge, however, he must have learned what these terms mean by having been concerned in the practical details of the business of boring wells for petroleum or natural gas or by his contact with experts who have a knowledge of the subject. The terms are not self-explanatory, nor are they well understood by the general public. The parties to the agreement differed materially as to what was a substantial compliance with the agreement, so far as it was the duty of the plaintiff to furnish the appliances referred to. Experts familiar with the business of boring wells also differed. Who should decide? "Parol evidence is admissible to explain the trade meaning or understanding of the use of a technical term in a contract between parties engaged in a particular business or trade. Such evidence does not vary the terms of the contract but serves to show what is the true interpretation of it:" 6 P. & L. Dig. of Dec. 10,203. There was no error, therefore, on the part of the court in admitting such expert testimony, nor was there error in submitting it to the jury for their determination and finding. It follows that no error was committed in the answers to the plaintiff's points and in the general instructions to the jury.

Upon a careful consideration of the whole case, we see no error of which the plaintiff has a right to complain. Judgment affirmed.